**Patricia Jane Rhodes LAUCK,
Petitioner-Appellee,**

v.

**James Phillip LAUCK,
Respondent-Appellant.**

Court of Appeals of Tennessee,
Western Section, at Jackson.

July 13, 1984.

Application for Permission to Appeal
Denied by Supreme Court
Oct. 1, 1984.

Blanchard E. Tual, Memphis, for petitioner-appellee.

Arnold Goldin and Lee J. Bloomfield, Memphis, for respondent-appellant.

NEARN, Presiding Judge, W.S.

This is an appeal from the Chancellor's decree that determined the husband's liability under an orally amended settlement agreement.

In 1978 the parties in this matter were divorced. By agreement of the parties, which agreement was incorporated into the final decree, the husband was to pay to the wife as alimony *in solido* the sum of $480,000.00. Said sum was to be paid in monthly payments of $2,000.00 each for a period of twenty years. Also, Mr. Lauck was to pay all income taxes incurred by Mrs. Lauck because of the $24,000.00 annual income. In short, the $480,000.00 was to be tax free to Mrs. Lauck.

At the time of the divorce and at the present, Mr. Lauck owned and operated an office equipment business known as Rhodes, Lauck & Associates, Inc. Prior to the divorce, Mrs. Lauck had worked in the business, as well as two of the parties' children who are yet there employed.

The facts that gave rise to this controversy are in 1978 the business owned by Mr. Lauck began to suffer financial difficulties. From this business Mr. Lauck received his principal income with which he retired the alimony *in solido* obligation. In an effort to obtain additional financing for the business, application was made for a Small Business Administration loan. One of the conditions placed on the loan by the Small Business Administration was that Mr. Lauck's annual salary taken out of the business be reduced from $60,000.00 to $40,000.00. Realizing the obvious, that is, he could not pay Mrs. Lauck $24,000.00 per year plus her income tax liability plus child support payments (at that time he was also liable for child support as all children had not reached their majority) and live above poverty level on the net received from an annual gross salary of $40,000.00, Mr. Lauck, Mrs. Lauck and an officer from a lending institution met to see what could be done in the situation. Mrs. Lauck, to her credit, was not uncompromising in the matter. She no doubt realized that if the business failed, so did Mr. Lauck's income and it was beneficial to all concerned that a loan be obtained and the business continue in its operation, otherwise, the fable re-

garding the goose that laid the golden egg might, in principle, be applied to real life. Therefore, at that meeting, the parties orally agreed to amend the terms of payment of the alimony award. But, what was that agreement? That is the question. At least it was the first question to be determined by the Trial Court and we think by this Court.

In encapsulated form, Mrs. Lauck's version was that she would come back to work for the business, for which she would be paid a salary and the difference between that salary and the $2,000.00 per month and taxes due under the alimony agreement would be paid personally by Mr. Lauck. However, since, under the terms of the *in solido* award, Mrs. Lauck did not have to work to receive $2,000.00 per month, this arrangement left an unaccounted for difference. As to this difference, Mrs. Lauck testified:

I would receive the same amount of money but it would be for my services during this period of time until Mr. Lauck paid that loan off. I had to have X-number of dollars to live. And I was willing to work to help him until he could pay this loan off. But I did expect to receive the money that he owed me in the future. And I was told that I would be compensated in the future.

And

That if I would agree to do this for him, that in the future, he felt like he could see a lot of light and that he would not forget it.

Mr. Lauck's version of the agreement was:

The original agreement was that she was going to come back to work, draw a salary, in lieu of the alimony payments, as long as she got the same amount she said she would be happy, and whether she did any work, little work, the intention was for her to do some work, and it didn't work out that way.

As may now be seen the main dispute between the parties regarding their understanding is whether the funds she received under the new arrangements were entirely in lieu of the monthly alimony payments or was Mrs. Lauck to be later compensated for the resulting short fall in alimony payments, if she was not to be considered as working gratis.

In 1980 the auditors of the business questioned the propriety of paying a salary to a person, who at that time, did not appear to be actually working for the company. The up shot of that inquiry was that Mrs. Lauck was terminated from the payroll and Mr. Lauck commenced to pay her under the terms of the alimony agreement. Then, this suit was filed by Mrs. Lauck seeking judgment for $86,075.57, which she alleged had accumulated during the period 1978 to 1981 that she worked and was due under the alimony agreement after giving him credit for the "difference" he had paid personally during that period.

Mr. Lauck denied anything was due and that the agreement between the parties was to the effect that it all was entirely in lieu of alimony.

In part, the Chancellor found:

The proof established that plaintiff performed most of the services and work during the early part of the period in controversy. In 1980 she suffered from an illness and was not able to work to a great extent. She had bed rest for a period of time, and limited activity for approximately five months. Also in 1980, the defendant indicated to her that it was emotionally upsetting for her to be around him, and she attempted to not be at the business when he was there. The plaintiff indicated she was seldom at the business during the period of January, February and March of 1981. In addition, she was paid by RLA, Inc. during 1980 and 1981 for services in addition to the salary paid her by Rhodes-Lauck.

In essence, he further found that, in effect, the parties had agreed that Mrs. Lauck would actually work and perform valuable services for Rhodes, Lauck & Associates, Inc., for a salary, in order that she would have necessary funds on which to live when supplemented by personal funds

of Mr. Lauck for the difference between the salary and the $2,000.00 alimony award. Further, that Mrs. Lauck was to be later compensated by Mr. Lauck for the short fall on alimony payments represented by that which she received as salary. The Chancellor computed that which was due under the alimony agreement during the period in question and in effect deducted from that amount a portion of the salary she received for which he found that Mrs. Lauck had done no work. In short, money paid by the corporation for which she did nothing, he treated as applicable to alimony and money paid by the corporation for services rendered, he considered it as such and as earned by her; therefore, not attributable to alimony. Accordingly, judgment was entered against Mr. Lauck for $46,-863.26.

Mr. Lauck appeals from this judgment and gives as the issues:

1. Did the court err in finding the Petitioner-Appellee performed services during the years 1978 and 1979 for a corporation owned by Respondent-Appellant sufficient enough to entitle her to consider the payments made to her by said corporation as salary rather than alimony, when the court found that Petitioner-Appellee had agreed to accept the payments from said corporation in lieu of payments directly from Respondent-Appellant toward his alimony in solido obligation, and granted Respondent-Appellant a complete set-off for the identical payments made during the years 1980 and 1981.

2. Assuming Petitioner performed some services for this corporation, did the court err in determining the value that it placed on the services.

3. Did the court err in not granting Respondent-Appellant an additional set-off for monies paid in lieu of alimony to Petitioner-Appellee during the years 1980 and 1981 by another of Respondent's corporations.

The validity of the first issue hangs upon the allegation therein that the Court found that plaintiff "had agreed to accept the payments from said corporation *in lieu of* —alimony." Black's Law Dictionary, 708 (rev. 5th ed. 1979) appropriately defines the meaning of the phrase "in lieu of" as "Instead of; in place of; in substitution of." Therefore, if the Chancellor found as a fact that Mrs. Lauck agreed to accept the new arrangement "in lieu of" (within its strict meaning) alimony payments, she agreed to accept the new payment arrangement as a complete substitution for alimony payments as originally agreed upon and she could not at a later date seek payment for that which she agreed would be replaced by the salary. In the Chancellor's finding of fact, at the point where he discusses the circumstances of her termination, it is stated "Plaintiff was satisfied with the employment relationship and receiving a salary in lieu of alimony." As to the first issue, it is upon this statement in the record that appellant's argument regarding the "in lieu of" finding pends.

The pendant statement will not hold all the weight that counsel for appellant seeks to attach to it. Counsel seeks to hang and throttle the entire judgment of the Trial Court on that statement, but a reading of the entire findings, coupled with the judgment of the Court, shows that the *"in lieu of"* phrase was meant to attach to the conditions as existed at the time of her termination. When such is understood, the statement is in perfect harmony with the Court's judgment.

As before noted in our brief summary of the Chancellor's findings, he found that when the new arrangement was made, both parties understood that Mrs. Lauck would work and perform valuable services for the salary paid. Even Mr. Lauck stated such was the agreement, but he also stated "it didn't work out that way." The Chancellor also found that later on "it didn't work out that way", meaning that by the time of her termination, for various reasons, including her protracted illness, Mrs. Lauck performed little or no services for the salary she drew. Therefore, at the time of her termination, the Chancellor found that salary received at that time

must be considered in lieu of alimony; because even under Mrs. Lauck's theory of the case she was supposed to work for the salary received. Therefore, the Chancellor found that part of her salary (that for which she worked) was not in lieu of alimony and part (that for which she did not work) had to have been received in lieu of alimony. There is no inconsistency in the Chancellor's finding.

 We have reviewed this record *de novo* as required. 13(d) T.R.A.P. After having made such review, we concur in the Chancellor's findings of fact regarding the new agreement made between the parties as actually made, and as necessarily amended by the conduct of the parties when Mrs. Lauck accepted salary for work not performed. The first issue is found against appellant.

The remaining two issues relate to the amount of the judgment if one is to be entered against appellant.

 We do not perceive the second "issue" to be one that was tried below. As stated by the Chancellor, the issue tried was "whether this salary received by plaintiff is alimony as set out within the terms of the property settlement agreement." As stated in appellant's answer to Mrs. Lauck's petition, his main affirmative defense was "that the acceptance of said monies by Petitioner on said terms is an accord and satisfaction of any sums due to Petitioner by Respondent." To determine that issue proof was adduced to determine whether Mrs. Lauck performed services for the salary, not the value of those services. Of course, if the alleged services were a sham they would constitute no services, but the actual value of the services *per se* we see as an issue raised on appeal for the first time and accordingly will not be considered. See *Tops Bar-B-Q, Inc. v. Stringer*, (1977 Tenn.App.W.S.) 582 S.W.2d 756.

 We believe there is merit in the third issue. Mr. Lauck claimed a credit against accruing alimony for funds paid to Mrs. Lauck during 1980 and 1981 by another of the corporations owned by Mr. Lauck.

The Chancellor denied the set off without giving his reasons. The Chancellor found that during 1980 and 1981 Mrs. Lauck was not actively working for Rhodes, Lauck & Associates, Inc., and the money received during that period as salary was in lieu of alimony. During that same period Mrs. Lauck received a "salary" from another of Mr. Lauck's corporations known as R.L.A., in the total amount of $10,010.22. Mrs. Lauck neither asserted nor proved that she performed any services whatsoever for R.L.A. during this period. Such being the case, we find the credit should have been allowed under Mrs. Lauck's theory of the matter, i.e., she was entitled to receive alimony without doing any work for anyone and payment for services rendered cannot be considered as alimony payment. It seems Mr. Lauck would be entitled to credit; for if he is entitled to no credit for salary paid for work performed, he would be entitled to credit for salary paid through his alter ego, for work not performed. Accordingly, we find the third issue in favor of the appellant.

The result is that the judgment below shall be reduced by the sum of $10,010.22 and as reduced, affirmed.

Costs below are as there adjudged and costs of appeal are adjudged equally against the parties.

Done at Jackson in the two hundred and eighth year of our Independence and in the one hundred and eighty-ninth year of our Statehood.

TOMLIN and CRAWFORD, JJ., concur.